UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| WILLIAM RAMSEY, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 6:24-CV-001-CHB |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION AND** |
| LOWE'S HOME CENTERS, LLC, | ) | **ORDER** |
| | ) | |
| Defendant. | ) | |

*** *** *** ***

This matter is before the Court on Defendant Lowe's Home Centers, LLC's Motion for

Summary Judgment regarding breach, [R. 31], Defendant's Motion for Summary Judgment on

Causation, [R. 34], and Defendant's Motion to Exclude Testimony and/or Opinions of Plaintiff's

Expert Witness, Keven Moore ("Motion to Exclude"), [R. 36]. Plaintiff William Ramsey filed a

response in opposition to each motion, *see* [R. 35]; [R. 44]; [R. 43], and Defendant replied, *see*

[R. 37]; [R. 46]; [R. 45]. As such, the motions are ripe and ready for review. For the following

reasons, Defendant's Motion for Summary Judgment regarding breach, [R. 31], will be denied;

Defendant's Motion for Summary Judgment on Causation, [R. 34], will be granted in part and

denied in part; and Defendant's Motion to Exclude, [R. 36], will be granted.

I.      **BACKGROUND**

Plaintiff filed his Complaint, [R. 1-2], in Pulaski County Circuit Court on December 6,

2023. *Id.* On January 3, 2024, Defendant removed the case pursuant to 28 U.S.C. §§ 1441 and

1446 based on diversity jurisdiction under 28 U.S.C. § 1332. [R. 1].

Plaintiff is a self-employed woodturner from Somerset, Kentucky. *See* [R. 34-3, pp. 13:2–

14:8 (Ramsey Depo. Excerpts)]; [R. 44-5, p. 15 (Pl. Answer Def.'s Interrogs. No. 25, 26)].

- 1 -

Defendant is a corporation that owns and operates retail stores, including one in Somerset, Kentucky. *See* [R. 13]; [R. 1-3, ¶ 4]; *see, e.g.*, [R. 31-1, p. 1]. The Complaint asserts a single count of negligence related to Plaintiff's shoulder injury allegedly sustained while visiting the Lowe's store in Somerset. [R. 1-2, ¶¶ 3–15]. The following facts are drawn mainly from Plaintiff's deposition testimony, which is largely uncontroverted, as no other witnesses were deposed as far as the Court can tell.

On December 7, 2022, Plaintiff traveled to the Somerset Lowe's store to buy some sheets of plywood and other materials. *See* [R. 35-2, pp. 143:15–145:22, 159:2–11 (Ramsey Depo. Excerpts)]. When he first arrived, the lumber aisle was closed, and employees were "stocking everything." *Id.* at 146:15–22. When the aisle re-opened, he noticed a "full unit" of plywood had been stacked on the second shelf, the top of which was about eighty-four inches high. *Id.* at 156:11–17; [R. 34-3, pp. 122:2–10 (Ramsey Depo. Excerpts)]. Plaintiff had removed plywood from the second shelf "hundreds of times" in the past. *Id.* at 165:10–166:3. But on this occasion, given the height of the stacked plywood, he asked for assistance. [R. 35-2, pp. 148:4–5, 152:21–153:7]. Plaintiff approached three Lowe's employees standing close by to ask for help—one identified as Alan Hall, a second "blonde guy," and a female employee—and was told it would "be a minute." *Id.* at 148:4–5, 150:1–151:24, 152:21–153:7. He did not know how long he waited for help, but estimated it was about five to ten minutes. *See id.* at 153:8–19.

Plaintiff testified that the Lowe's employees "were just standing there, still talking. The customer [who had been with them earlier] had left." *Id.* at 153:20–22. So, he asked for help a second time from the same employees and was again told to wait, one employee responding, "I said it's going to be a minute." *Id.* at 155:21–156:4. Plaintiff then called a friend at another hardware store to see if they had plywood available because, as he testified that he said to his

- 2 -

friend, "[Lowe's] put full units on the second shelf, and [he] [could not] get them to help [him]." *Id.* at 156:5–17; *see also id.* at 158:12 (explaining there was a full unit on the second shelf). Plaintiff's friend said his hardware store had just had a "run" on plywood and had none left, so Plaintiff would have to get the plywood at Lowe's. *See id.* at 156:18–25.

Plaintiff decided to try and get the plywood down himself. *Id.* at 157:2–4 ("I looked over at [the employees], and I thought, 'well, let's see if I can get it down.'"). Plaintiff "had to tippy-toe" to reach the top of the plywood and first moved the top two pieces of plywood to the side because they were damaged from the metal banding. *Id.* at 157:4–9, 158:7–13; *see also* [R. 34-3, p. 112:3–25 (explaining that the top of the plywood was about eighty-four inches off the ground)]. He then went to take a piece down for himself, and as he was coaxing it out, the plywood sheet "hit the [ ] rails of the above shelf" and "jam[med]," but, "[w]hen it came down, [Plaintiff] caught it." [R. 35-2, p. 158:7–19]. After placing the first piece of plywood in his cart, Plaintiff "hear[d] laughing, and it [was] the employees [he had] asked for help. They're standing there, laughing." *Id.* at 158:19–23.

He was able to get "a few pieces down," *id.* at 159:2–4, but, he testified, a subsequent piece, the second or third, also "got hung up." *Id.* at 159:4–5. Plaintiff testified that he was attempting to remove it "a little inch at a time" when he again heard laughter from the employees who he had twice asked to help him. *Id.* at 159:4–15; *see also id.* at 158:21–23. He turned to look at the employees, and when he turned back to the plywood, it was falling and, when "he went to catch it," "[his] arm just went straight back that way and down, and [his] shoulder came out." *Id.* at 159:9–15. After he fell, the blonde-haired employee "came running pretty quick," and said "hey, man, all you had to do is ask for help." *Id.* at 160:11–16. Plaintiff responded that he had asked for help three times. *Id.* at 91:13–15. When Plaintiff told that employee he needed to go to the

emergency room, the employee turned around, walked away, and said "sir, you be sure and have yourself a real nice day, you hear?" *See id.* at 91:4–21. The plaintiff then left the store. *See id.* at 92:11–93:20. An MRI five days later revealed multiple tears to Plaintiff's shoulder:

> (1) Full thickness supraspinatus and infraspinatus tears. (2) High-grade partial subscapularis tear with medial subluxation of the biceps tendon. (3) Posterior inferior labral tear. (4) Irregularity of the anterior-inferior glenohumeral ligament complex. Partial tear not excluded. (5) AC joint degenerative disease with osteophytosis narrowing the supraspinatus outlet.

[R. 34-4, p. 2].

When, in the course of this litigation, Plaintiff was asked to give "a list of injuries that [he] sustained that [he] believe[s] were caused by what happened on December 7th of 2022," Plaintiff responded that "the rotator cuff was torn off the bone, which required surgery" on right side, as well as "the right labrum was horribly torn," leading to the surgeon having "to go back in and re-do it," as well as "shave [] all the scar tissue," and "redo the scapula." [R. 34-3, pp. 83:13–84:2]. He also asserts an injury to his bicep. *Id.* at 84:4. According to his testimony, he had no previous issues with either of his shoulders. *Id.* at 84:22–85:11; *see also* [R. 44-3, p. 17 (Independent Medical Exam with Larry Oteham) (denying any prior injury to shoulder)].

As a result of this incident, Plaintiff sued Defendant for negligence, alleging it had:

failed to exercise ordinary care for the safety of [its] business invitees, including Plaintiff, by:

> a.  Failing to maintain the premises in a reasonably safe condition;
>
> b.  Negligently creating, allowing to occur, and/or having reason to know of the dangerous conditions which posed hazard to persons such as the Plaintiff;
>
> c.  Failing in their duty to protect or warn such persons as Plaintiff from dangers known to or reasonably discoverable by Defendant, their agents, servants, or employees; and
>
> d.  Failing to take reasonable measures to protect such persons as Plaintiffs from the harm presented by the hazard.

[R. 1-2, ¶ 12]. Plaintiff seeks to recover damages for medical expenses, pain and suffering, the"[i]ncreased likelihood of future complications and inconvenience," and the impairment of his "overall health and enjoyment of life." *Id.* ¶ 14.

## II.    SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56, a court may grant summary judgment if it finds "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine dispute of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Winkler v. Madison Cnty.*, 893 F.3d 877, 890 (6th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The moving party bears the initial burden "of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted); *see also Anderson*, 477 U.S. at 256. That burden may be satisfied by demonstrating that there is an absence of evidence to support an essential element of the non-moving party's case for which he or she bears the burden of proof. *Celotex Corp.*, 477 U.S. at 323.

Once the moving party satisfies this burden, the non-moving party must then produce "specific facts, supported by the evidence in the record, upon which a reasonable jury could find there to be a genuine fact issue for trial." *Bill Call Ford, Inc. v. Ford Motor Co.*, 48 F.3d 201, 205 (6th Cir. 1995) (citation omitted); *see Turner-Meadows v. GM, LLC*, 786 Fed. App'x 592, 595–96 (6th Cir. 2019). "The evidence of the non-movant is to be believed, and all justifiable inferences

are to be drawn in his favor." *Anderson*, 477 U.S. at 255 (citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158–59 (1970)). However, the Court is not obligated to "search the entire record to establish that it is bereft of a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001). Rather, "the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *Id.*

## III.    ANALYSIS

### A.  Motion to Exclude, [R. 36]

Defendant's first Motion for Summary Judgment argues that Plaintiff cannot demonstrate that Defendant breached its duty owed to Plaintiff as a business invitee. *See generally* [R. 31-1]. Plaintiff responded in opposition, *see* [R. 35], relying in part on the report created by his purported expert, Keven Moore ("the Moore Report"). *See id.* at 9–10; *see also* [R. 35-3 (Moore Report)]. Defendant filed a Motion to Exclude, seeking to preclude introduction of Moore's testimony and opinions, [R. 36], and that motion is fully ripe, [R. 43]; [R. 45]. Before addressing the Motion for Summary Judgment on breach, the Court will first address the Motion to Exclude.

"Admissibility in federal court, including the admissibility of expert testimony, is determined by federal standards even when a case such as this one is tried in diversity." *Commins v. Genie Indus., Inc.*, No. 3:16-CV-00608-GNS-RSE, 2020 WL 1189937, at *2 (W.D. Ky. Mar. 12, 2020) (internal quotation marks and citation omitted). As a result, Federal Rule of Evidence 702, which governs the use of expert testimony, guides the Court's analysis. Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education, may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

The Sixth Circuit has found that, based on the language of Rule 702, an expert's opinion is admissible if it satisfies three requirements:

> First, the witness must be qualified by "knowledge, skill, experience, training, or education." Fed. R. Evid. 702. Second, the testimony must be relevant, meaning that it "will assist the trier of fact to understand the evidence or to determine a fact in issue." *Id.* Third, the testimony must be reliable. *Id.*

*In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 528–29 (6th Cir. 2008).

Regarding the first of these requirements, the Sixth Circuit has explained that "[e]xperts are permitted a wide latitude in their opinions, including those not based on firsthand knowledge, so long as 'the expert's opinion [has] a reliable basis in the knowledge and experience of the discipline.'" *Jahn v. Equine Servs., PSC*, 233 F.3d 382, 388 (6th Cir. 2000) (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592 (1993)). Accordingly, the Court's role is to examine "not the qualifications of a witness in the abstract, but whether those qualifications provide a foundation for a witness to answer a specific question." *Berry v. City of Detroit*, 25 F.3d 1342, 1351 (6th Cir. 1994). Ultimately, "a witness is not a qualified expert simply because he self-identifies as such," but courts "take a liberal view of what 'knowledge, skill, experience, training, or education' is sufficient to satisfy the requirement." *Bradley v. Ameristep, Inc.*, 800 F.3d 205, 208–09 (6th Cir. 2015) (quoting *Pride v. BIC Corp.*, 218 F.3d 566, 577 (6th Cir. 2000)).

Rule 702 also guides the trial court by providing general standards to assess reliability: whether "the testimony is based on sufficient facts or data," "whether the testimony is the product

of reliable principles and methods," and whether "the expert's opinion reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702. In addition, the Supreme Court has provided a non-exclusive checklist for trial courts to consult in evaluating the reliability of expert testimony, including: "testing, peer review, publication, error rates, the existence and maintenance of standards controlling the technique's operation, and general acceptance in the relevant scientific community." *United States v. Langan*, 263 F.3d 613, 621 (6th Cir. 2001) (internal quotation marks omitted) (citing *Daubert*, 509 U.S. at 593–94). However, "[t]he test of reliability is 'flexible,' and the *Daubert* factors do not constitute a 'definitive checklist or test,' but may be tailored to the facts of a particular case." *In re Scrap Metal*, 527 F.3d at 529 (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999)). Thus, the Sixth Circuit has "recognized that the *Daubert* factors are not dispositive in every case and should be applied only where they are reasonable measures of the reliability of expert testimony." *Id.* (internal quotation marks and citation omitted).

Ultimately, the trial judge is the gatekeeper, ensuring that expert testimony satisfies the requirements of reliability and relevance. *See Daubert*, 509 U.S. at 597 (recognizing "a gatekeeping role for the judge" under Rule 702). However, the proponent of the testimony bears the burden of establishing its admissibility by a preponderance of proof. *Nelson v. Tenn. Gas Pipeline Co.*, 243 F.3d 244, 251 (6th Cir. 2001) (citing *Daubert*, 509 U.S. at 592 n.10). Nevertheless, "[a]ny doubts regarding the admissibility of an expert's testimony should be resolved in favor of admissibility." *In re: E. I. du Pont de Nemours & Co. C-8 Pers. Injury Litig.*, 337 F. Supp. 3d 728, 739 (S.D. Ohio 2015) (citations omitted). Therefore, "rejection of expert testimony is the exception, rather than the rule, and [courts] will generally permit testimony based on allegedly erroneous facts when there is some support for those facts in the record." *In re Scrap*

- 8 -

*Metal*, 527 F.3d at 530 (citation modified). With this standard in mind, the Court turns to the pending Motion to Exclude. [R. 36].

According to the Moore Report, Moore is a "Senior Risk Control Consultant/Manager/HSE Safety Manager/Independent Consultant of demonstrated experience in leading organizations to integrate progressive safety, health, environmental, risk management and claims initiatives within public and private sectors." [R. 36-3, p. 7]; *see also id.* at 16–19 (Moore's Curriculum Vitae ("CV")). In his Report, he opines that "it is [his] professional opinion that [Defendant] did not fulfill the requisite duty of care to safeguard [Plaintiff] on December 7th, 2022," and such failure "to adhere to the standard professional care and practices mandated in the retail building materials and home improvement industry, which are critical for the safe operation of such establishments, . . . significantly contributed to the injury sustained by [Plaintiff]." *Id.* at 10. Moore asserts that he underwent a "thorough examination of the case documentation, deposition records, relevant websites, and [drew] upon [his] 37 years of experience as a risk control and safety expert" to form his opinions. *Id.*

In reaching his opinions on Defendant's purported "deviation from reasonable and prudent standards of care practiced at [Somerset Lowe's] to adequately protect [Plaintiff]," *id.* at 15, Moore relied specifically on the following sources: "Wikipedia," *id.*; "[Plaintiff's] deposition testimony," *id.* at 11; "[Defendant's] website," *id.*; "Zippa.net," *id.* at 12;[1] and "Yelp reviews for this store's location," *id.* at 13. In the Report's "Methodology" section, Moore states: "Before preparing this report, I reviewed the following documents and professional literature," then lists several items of discovery he reviewed but no professional literature. *Id.* at 9.

---

[1] The Court understands, based on the screenshot provided, that Moore is referring to zippia.com, a website service which uses "proprietary data on salaries, companies, and job-based metrics" to assist people in finding and applying to jobs—rather than zippa.net, which the Court could not locate. *See About Us*, Zippia, https://www.zippia.com/about-us/ (last visited July 28, 2025).

Defendant seeks to exclude all testimony and opinions by Moore, and articulates eight reasons why, it argues, Moore's Report and related testimony would fail to satisfy *Daubert* and Rule 702, namely that Moore: (1) "lack[s] experience in the field of retail lumber or home improvement," [R. 36-2, p. 10]; (2) "does not document or describe any methodology," *id.* at 11; (3) "attempts to usurp the function of the Court by opining on the duty allegedly owed by [Defendant] to its customers," *id.* at 12; (4) "is not qualified to give causation opinions" because he is not a medical doctor, *id.* at 14; (5) "contradict[s] the burden of proof imposed upon Plaintiff and attempt[s] to redirect it to Defendant," *id.* at 14–15; (6) "engages in flat-out speculation," *id.* at 15; (7) "opined that [Defendant] should have had signage in the lumber aisle . . . [which] is moot based on Plaintiff's own testimony," *id.*; and, finally, (8) "relied on questionable online sources for information . . . which are not sources of scientific, technical, professional, or other specialized knowledge." *Id.* at 16. From this, the Court understands that Defendant primarily challenges Moore's qualifications and the reliability of his testimony, and it also raises concerns about Moore's ability to make legal determinations, among other things.

As an initial matter, it is axiomatic that an expert witness may not testify to legal conclusions. *See, e.g.*, *Hyland v. HomeServices of Am., Inc.*, 771 F.3d 310, 322 (6th Cir. 2014) ("Federal Rule of Evidence 704(a) states that '[a]n opinion is not objectionable just because it embraces an ultimate issue.' Fed. R. Evid. 704(a). Nonetheless, a witness may not testify to a legal conclusion." (citing *Berry*, 25 F.3d at 1353)). By way of example, in *Nelson v. Costco Wholesale Corp.*, No. 3:18-CV-278-BJB-RSE, 2021 WL 2459472 (W.D. Ky. June 16, 2021), *aff'd*, No. 21-5666, 2022 WL 221638 (6th Cir. Jan. 26, 2022), the court found that the proposed "retail-safety expert" could not testify that the defendant warehouse store "did not comply with 'generally accepted industry safety standards, protocols, and procedure'" when he "fail[ed] to identify those

- 10 -

standards or describe [the defendant's] alleged violations." *Id.* at *4–5 (citation omitted). The report merely stated that the "standards [were] 'well-known,' and require[d] the 'Store Manager' to 'oversee and provide a safe and hazard-free shopping venue,'" *id.* at *5, and the court found that "[p]roviding a 'safe and hazard-free' premises [ ], is at best a gloss on a generic *legal* standard applicable to premises liability, not 'specialized knowledge' that would 'help the trier of *fact*.'" *Id.* (emphasis in original) (citations omitted).

Similarly, the Moore Report opines that Defendant "did not uphold a reasonable standard of duty of care to safeguard [Plaintiff]"; "failed to adhere to the professional care and practices that are customary in the retail building materials and home improvement industry, which are essential for operating such an establishment safely"; "failed to exercise their duty of care in safely retrieving awkward, heavy, and oversized stock"; and, along with its employees, engaged in "several reckless and actions and inactions that helped create a very dangerous environment." [R. 36-3, pp. 10, 13]. As in *Nelson*, Moore fails to identify the alleged industry standard or professional care and practices that are "customary," and fails to describe how Lowe's allegedly breached them. Further, many of these broad-brush statements are legal conclusions or generic recitations of the legal standard to which Moore cannot properly testify. *Cf. Nelson*, 2021 WL 2459472, at *5.

Turning to Defendant's remaining arguments, the Court is mindful that the issue of "retail-safety experts" has arisen in several cases, and courts have found those purported experts to lack the necessary qualifications, relevance, and reliability necessary to be qualified as experts. *See generally Nelson*, 2021 WL 2459472, at *4–10; *Smith v. Dollar Tree Stores Inc.*, No. 2:18-CV-243, 2019 WL 4345708, at *2–5 (S.D. Ohio Sep. 12, 2019); *see also Yazujian v. PetSmart*, 729 F. App'x 213, 216 (3d Cir. 2018). Like Defendant's arguments, those cases focus predominantly on

reliability. *See generally* [R. 36-2]; *Nelson*, 2021 WL 2459472, at *4–10; *Smith*, 2019 WL 4345708, at *4–5; *Yazujian*, 729 F. App'x at 216.

"The concept of 'reliability' implies that an expert's opinion must be based on something 'more than subjective belief or unsupported speculation.' Rather, a reliable opinion requires that the expert use (1) a reliable methodology, and (2) base his or her opinion on reliable facts or data." *Navarro v. Procter & Gamble Co.*, 501 F. Supp. 3d 482, 489 (S.D. Ohio 2020) (internal citation omitted) (quoting *Daubert*, 509 U.S. at 590) (citing *In re Scrap Metal*, 527 F.3d at 529). Aside from containing a section titled "Consultant's Methodology" that lists "evidence reviewed," [R. 36-3, p. 9], the Moore Report utterly fails to identify the method Moore used to reach his conclusions. This fails to fulfill the Sixth Circuit's decree that "[e]xpert reports must include how and why the expert reached a particular result, not merely the expert's conclusory opinions." *R.C. Olmstead, Inc., v. CU Interface, LLC*, 606 F.3d 262, 271 (6th Cir. 2010) (citation modified) (affirming the district court's refusal to consider expert testimony when the report did not meet the standards of Federal Rule of Civil Procedure 26(a)(2)(b), which governs expert witness reports); *see also Henry v. City of Flint*, No. 17-CV-11061, 2019 WL 2207669, at *5 (E.D. Mich. Apr. 19, 2019), *report and recommendation adopted*, No. 17-CV-11061, 2019 WL 2211847 (E.D. Mich. May 21, 2019) (applying this rule in the context of a motion to exclude under Rule 702).

Moore's report is similar to the report excluded by the district court in *Henry*. *Cf.* 2019 WL 2207669, at *5. There, the proposed expert's report failed to demonstrate that his opinions were "based on sufficient facts and data, or that they [were] the product of reliable principles and methods that [he] reliably applied, as required by [Rule] 702(b)." *Id.* This was because "half of [the report] [was] devoted to providing [the proposed expert's] understanding of the facts, a list of information he reviewed, and his professional background," while the rest "merely state[d] [his]

opinions, re-state[d] them, noting that they are based on his review of the facts and his training and experience, and then re-state[d] them again, as his 'Conclusions.'" *Id.* The Moore Report fares no better, as it is comprised largely of conclusory statements purportedly based on Moore's experience. *Compare id.*, *with* [R. 36-3, pp. 7–19].

The *Nelson* case is again instructive. There, the plaintiff sought to introduce testimony of a "retail-safety expert," who intended to testify "regarding [the defendant's] duty of care and breach." *See Nelson*, 2021 WL 2459472, at *2–4. The court found that the proposed expert did not "'cite[ ] tests, data, reports, written standards, or any other testable evidence to support any of [his] opinions,'" *id.* at *10 (alterations in original) (quoting *Keyes v. Techtronic Indus. Factory Outlets*, No. 3:18-CV-671, 2020 WL 5592694, at *2 (S.D. Miss. Aug. 4, 2020)), and thus "the [c]ourt ha[d] no basis to find that his 'method was tested, accepted, or used by other experts in the field of retail safety.'" *Id.* (quoting *Yazujian*, 729 F. App'x at 216).

Similarly, Plaintiff has utterly failed to provide the Court with any basis to find that Moore's method—which remains a mystery to the Court other than his listing of "evidence reviewed" and ostensibly his experience—has been "'tested, accepted, or used by other experts in the field of retail safety.'" *Cf. id.* As such, the Court finds that Plaintiff has not met his burden of demonstrating that Moore "use[d] a reliable methodology." *See Navarro*, 501 F. Supp. 3d at 489 (citation modified). As explained by the *Henry* court, "[e]xcluding an expert's *ipse dixit* opinion testimony maintains the integrity of *Daubert*'s requirements because, '[i]f admissibility could be established merely by the *ipse dixit* of a[ ] qualified expert, the reliability prong would be, for all practical purposes, subsumed by the qualification prong.'" *Henry*, 2019 WL 2207669, at *5 (quoting *United States v. Frazier*, 387 F.3d 1244, 1261 (11th Cir. 2004)).

Relatedly, the Court finds that Plaintiff has failed to demonstrate that Moore "base[d] his [ ] opinion[s] on reliable facts or data." *See Navarro*, 501 F. Supp. 3d at 489. Although Moore mentions a few "best practice[s]" and "standard practice[s]" in the retail industry, he does so in very general terms, failing to articulate what these are and failing to identify the source of his knowledge of those practices. *See, e.g.*, [R. 36-3, p. 11 ("[I]t is best practice and common in their retail home improvement business to train and employ well abled employees to move, lift and retrieve merchandise for their customers.")]; *id.* at 12 ("[Defendant] failed to provide any evidence indicating the presence of safety signage . . . [and the] omission is notable, as the implementation of such safety measures is a standard practice within the retail industry to mitigate liability claims from customers."). Even after reviewing Moore's Report, "the Court remains in the dark about how the proffered expert would explain to a jury the facts indicating which [retail] standards applied to [Defendant] and whether [it] complied with them." *Cf. Nelson*, 2021 WL 2459472, at *5 (citing *Antioch Co. Litig. Tr. v. Morgan*, 633 F. App'x 296, 300 (6th Cir. 2015)). The Sixth Circuit has explained, "if an expert witness relies 'solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.'" *Antioch Co.*, 633 F. App'x at 300 (quoting Fed. R. Evid. 702 advisory committee's notes to 2000 amendments). Moore purports to rely almost exclusively on his experience, but offers nothing more than broad-brush conclusory statements and fails to connect his experience to his conclusions and statements about the retail industry.

Another retail premises liability case, *Smith*, also addressed the reliability of a proposed safety expert's opinions. *See* 2019 WL 4345708, at *4–5. The witness in that case opined that the defendant store's display was "opposite to the accepted practices for safe retail design and was

unreasonably dangerous to children in their store." *Id.* at *5 (citation omitted). The court noted that, "[i]n formulating that opinion, [it] would have expected [the witness] to do so consistent with established standards that are generally accepted within her field of expertise" and provided examples of what the witness could have done: "conducted interviews; taken relevant measurements; researched, inspected, and tested the display hook at issue; or reconstructed the display wall at issue and recreated the accident." *Id.* Instead, the witness had merely "reviewed a number of publications related to child safety that, in her opinion, indicate[d] that the use of display hooks like the one that injured [the child plaintiff] [was] generally dangerous to children." *Id.* Because the court "'found no indication in the record that other experts in the industry use' [her] principles and methods to support similar opinions," and the plaintiffs did not "'refer to any articles or papers that validate' [her] approach in similar circumstances," *id.* (citing *Kumho Tire*, 526 U.S. at 157), it found that "her 'report reads more like a research paper than an expert report because [s]he cites to secondary sources and then improperly reaches legal conclusions about this case.'" *Id.* (quoting *Pickens v. Wal-Mart Stores E., LP*, No. 3:14-CV-318-CAN, 2015 WL 4997064, at *4 (N.D. Ind. Aug. 20, 2015)).

In this case, Moore does not even indicate that he read "publications" relevant to retail home improvement standards. *Contrast id.*, *with* [R. 36-3]. Other than his own experience, Moore identifies only litigation documents and websites as the basis for his opinions. *See* [R. 36-3, pp. 9–13]. Websites such as Wikipedia, Zippia, and Yelp are clearly insufficient to meet Plaintiff's burden under Rule 702. *See, e.g.*, *Advanced Mech. Servs., Inc. v. Auto-Owners Ins. Co.*, No. 3:14-CV-388-DJH-CHL, 2017 WL 3381366, at *4 (W.D. Ky. Aug. 4, 2017) ("Wikipedia is not a learned treatise and lacks the reliability required by the federal rules to form the basis of an expert's opinion." (internal citation and quotation marks omitted)). Even Plaintiff does not argue that these

websites are appropriate bases for an expert opinion, insisting only that the websites were used "to
provide context." [R. 43, p. 7].

Moreover, Moore admits that, because he "was retained as an expert witness . . . nearly
[two] years after the incident had occurred, he "determined that there would be no value in . . .
visit[ing] the site of the accident." [R. 36-3, p. 15]. *Compare id.*, *with Nelson*, 2021 WL 2459472,
at *8 (noting "serious concerns" that the proposed expert opined on the store's compliance with
the Americans with Disabilities Act but "did not conduct an on-site examination of the accident
site, [and] instead relied on photographs and Google images"), *and Anderson v. Home Depot
U.S.A., Inc.*, No. GJH-14-2615, 2017 WL 2189508, at *5 (D. Md. May 16, 2017) (finding
testimony "not reliable" in premises liability case involving a different home improvement store
because the expert "point[ed] to no principles or methodology utilized in reaching his
conclusions[;] [did not] explain how his experience forms a sufficient basis for these conclusions";
"reviewed no evidence of the condition of the shelves prior to the accident"; "never visited the
[defendant's] store where the accident occurred"; "conducted no interviews"; "took no
measurements of anything related to the accident"; "did no research about any of the [ ] products
at issue . . . [or] inspect any of the products involved in the accident"; "performed no tests"; and
"did not reconstruct the display shelf or recreate the accident.").

Regardless, by Plaintiff's own admission, Moore failed to rely on anything other than "the
record in this matter, coupled with his extensive experience." [R. 43, p. 7]. This is insufficient on
this record to demonstrate reliability. Fed. R. Evid. 702. At no point does Moore, who "relies
'solely or primarily on experience[,] . . . explain how that experience leads to the conclusion[s]
[he] reached, why that experience is a sufficient basis for the opinion, and how that experience is
reliably applied to the facts.'" *Cf. Antioch Co.*, 633 F. App'x at 300 (quoting Fed. R. Evid.

- 16 -

702 advisory committee's notes to 2000 amendments). The Court simply cannot find that any of

Moore's proffered opinions are sufficiently reliable under Rule 702.[2] As such, Defendant's Motion

to Exclude will be granted.

### B.  Motion for Summary Judgment – Breach, [R. 31]

Plaintiff brings a common law, premises liability negligence claim against Lowe's. In

Kentucky, "[t]he elements of a negligence claim are (1) a legally-cognizable duty, (2) a breach of

that duty, (3) causation linking the breach to an injury, and (4) damages." *Patton v. Bickford*, 529

S.W.3d 717, 729 (Ky. 2016); *see also City of Barbourville v. Hoskins*, 655 S.W.3d 137, 140–41

(Ky. 2022).[3] In its first Motion for Summary Judgment, Defendant argues that Plaintiff's

negligence claim fails on the breach element because Plaintiff failed to raise a genuine issue of

fact that the plywood posed an unreasonably dangerous condition.[4] *See generally* [R. 31-1].

After addressing the contours of Defendant's duty as a land possessor, which Defendant

does not contest, the Court will address Defendant's breach argument.

---

[2] The Court notes that Moore concludes by opining that Defendant "failed to adequately protect the attendees from dangerous and foreseeable hazardous conditions that caused [Plaintiff's] *death* on December 7[], 2022." [R. 36-3 (emphasis added)]. This glaring misstatement only adds to the Court's reliability concerns.

[3] In a diversity case, like this one, the Court applies Kentucky state law in addressing Plaintiff's negligence claim. *See, e.g.*, *Hoven v. Walgreen Co.*, 751 F.3d 778, 783 (6th Cir. 2014) ("Under the *Erie* doctrine, in diversity cases we apply the substantive law of the forum state and federal procedural law." (first citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938); then citing *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996))).

[4] To the extent Defendant intended to argue that the Court cannot consider hearsay at this stage of the proceedings, *see* [R. 31-1, p. 4], that argument is wholly undeveloped and the Court need not consider it further. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." (quoting *Citizens Awareness Network, Inc. v. United States Nuclear Regulatory Comm'n*, 59 F.3d 284, 293–34 (1st Cir. 1995))) (internal quotation marks omitted). Regardless, the Sixth Circuit has made clear that hearsay statements may be considered at the summary judgment stage, so long as the evidence can be offered in an admissible form at trial. *See Wyatt v. North America, Inc.*, 999 F.3d 400, 423, 424 n.8 (6th Cir. 2021); Fed. R. Civ. P. 56(c)(2). Moreover, in this case, it appears that the statements at issue (e.g., statements of the Lowe's employees) are likely not hearsay, *see* Fed. R. Evid. 801(d), or would fall under an exception to the hearsay rule, *see* Fed. R. Evid. 803.

1. **Duty**

Premises liability claims, like the one Ramsey asserts in this action, are a particular subset of Kentucky negligence law.[5] *See Littleton v. Lowe's Home Ctrs., LLC*, No. 21-5033, 2021 WL 4058004, at *2 (6th Cir. Sep. 7, 2021) ("This is a case about premises liability, an offshoot of negligence."). "A negligence claim brought under a theory of premises liability asserts that a land possessor has violated his duty to maintain his premises in a reasonably safe manner." *Hoskins*, 655 S.W.3d at 141. "Historically, the scope of the duty owed by a land possessor was dependent upon the status of one claiming injury as either a trespasser, a licensee, or an invitee." *Id.*

In this case, Plaintiff was an invitee, as he was "'[a] customer of a store . . . on that part of the premises where customers are expected to go.'" *See Littleton*, 2021 WL 4058004, at *2 (quoting *Dicks Sporting Goods, Inc. v. Webb*, 413 S.W.3d 891, 897 (Ky. 2013)). Defendant owed Plaintiff, as an invitee, "'a duty [ ] to discover unreasonably dangerous conditions on the land and either correct them or warn of them.'" *See Littleton*, 2021 WL 4058004, at *2 (quoting *Dicks Sporting Goods*, 413 S.W.3d at 897); *see also Shelton v. Ky. Easter Seals Soc., Inc.*, 413 S.W.3d 901, 909 (Ky. 2013)[6]; *Dunn v. Wal-Mart Stores E., Ltd. P'ship*, 724 F. App'x 369, 372 (6th Cir.

---

[5] In a negligence action, the plaintiff bears the burden of proof. *See, e.g.*, *Hoskins*, 655 S.W.3d at 141 ("In any negligence case, *the plaintiff must prove* . . . .") (emphasis added). As this Court previously explained,

> [c]ertain cases applying Kentucky law in this context discuss "a burden-shifting approach to premises liability cases involving injuries to business invitees." *See Phelps v. Bluegrass Hosp. Mgmt., LLC*, 630 S.W.3d 623, 628 (Ky. 2021). However, other cases do not. *See Hoskins*, 655 S.W.3d at 141. It appears that the burden-shifting framework primarily applies in "slip-and-fall" cases or ones sufficiently analogous to such cases. *See Rollins v. Lowe's Home Centers, LLC*, No. CV 20-152-DLB-CJS, 2023 WL 2252376, at *2–3 (E.D. Ky. Feb. 27, 2023) (collecting cases).

*Ramsey v. Lowe's Home Ctrs., LLC*, No. 6:24-CV-001-CHB-HAI, 2024 WL 2163855, at *3 n.5 (E.D. Ky. May 14, 2024). Once again, "[n]either party in this action specifically argues that the burden-shifting framework applies," so the Court will not apply it. *Cf. id.*; *see also* [R. 37, pp. 2–3 (Defendant asserting that Plaintiff "incorrectly relies on the standard used only in slip-and-fall cases: a burden shifting framework . . ." (citations omitted))]; [R. 43, p. 5 (Plaintiff explicitly stating "Plaintiff has the burden of proof in this case")].

[6] In addition, a landowner is also subject to a universal duty of care. That is, "a land possessor is subject to the general duty of reasonable care." *Shelton*, 413 S.W.3d at 908. This general duty of reasonable care is separate and distinct from the "more specific duty associated with" premises-liability law. *Id.* at 910.

- 18 -

2018). The Kentucky Supreme Court has explained that "[a]n unreasonably dangerous condition is one that is recognized by a reasonable person in similar circumstances as a risk that should be avoided or minimized or one that is in fact recognized as such by the particular defendant." *Hoskins*, 655 S.W.3d at 141 (citing *Shelton,* 413 S.W.3d at 914).

A landowner is not relieved of its duty to exercise reasonable care to an invitee simply because a condition on the land or premises is open and obvious. *Shelton*, 413 S.W.3d at 911 ("[A]n open-and-obvious condition does not eliminate a landowner's duty."). Indeed, the duty "to eliminate or warn of unreasonable risks of harm" applies to both latent and obvious conditions. *Id.* at 914. Even so, "a landowner that fails to remedy an open and obvious condition does not create an 'unreasonable' risk 'if a reasonable person in the defendant's shoes would not take action to minimize or avoid the risk.'" *Maggard v. Wal-Mart Stores E., LP*, No. CV 6:14-221-KKC-HAI, 2016 WL 1228590, at *1 (E.D. Ky. Mar. 28, 2016) (quoting *Shelton*, 413 S.W.3d at 914). "In such circumstances, a landowner's duty of care is satisfied by the warning provided by the obviousness of the condition itself." *Id.* "The key question is foreseeability, that is, if a 'land possessor could reasonably foresee that an invitee would be injured by the danger,' then it is liable despite the obviousness of the condition because the risk posed remains unreasonable." *Id.* at *2 (citing *Kentucky River Med. Ctr. v. McIntosh*, 319 S.W.3d 385, 392 (Ky. 2010)). The *Shelton* Court outlined factors for consideration in this context:

> As discussed above, a landowner has a duty to an invitee to eliminate or warn of unreasonable risks of harm. In *McIntosh*, we adopted the factors listed in Section 343A of the Restatement (Second) where a defendant may be found liable despite the obviousness of the danger. To recap, those factors are: when a defendant has reason to expect that the invitee's attention may be distracted, so that he will not discover what is obvious or will forget what he has discovered, or fail to protect himself against it; and when a defendant has reason to expect that the invitee will proceed to encounter the known or obvious danger because to a reasonable man in his position the advantages of doing so would outweigh the apparent risk. These factors dovetail with what constitutes an unreasonable risk.

*Shelton*, 413 S.W.3d at 914.

### 2. Breach

In considering duty, breach, and causation at the summary judgment stage, the Court is mindful that the existence of a duty is a question of law, "whereas breach and injury are questions of fact for the jury to decide, . . . [c]ausation presents a mixed question of law and fact." *Patton*, 529 S.W.3d at 729. The Court is also aware of recent developments in Kentucky's premises liability law. "Beginning in 2010, the Kentucky Supreme Court has effected 'seismic' change in the Commonwealth's negligence law, at least relating to premises." *Greer v. Kaminkow*, 401 F. Supp. 3d 762, 770 (E.D. Ky. 2019) (quoting *Grubb v. Smith*, 523 S.W.3d 409, 415-21 (Ky. 2017) (reh'g denied and as modified Aug. 24, 2017)); *see also Shelton*, 413 S.W.3d at 904 (noting Kentucky's "slow, yet steady, progress to modernize our tort law and eliminate unfair obstacles to the presentation of legitimate claims"). Kentucky's highest court has made a "determined effort . . . to limit holdings, at trial or on appeal, that an obvious, risk-posing condition on the property is 'not unreasonable as a matter of law,' to those rare instances where they are justified." *Grubb*, 523 S.W.3d at 418. The Sixth Circuit recently noted, "[t]he Kentucky Supreme Court has repeatedly and explicitly declared that, under comparative fault, the unreasonableness and foreseeability of risk of harm is normally a question for the jury to determine in deciding whether the defendant breached its duty of care in all but the rarest of circumstances." *Dunn*, 724 F. App'x at 374; *see also Shelton*, 413 S.W.3d at 916 ("[T]he question of foreseeability and its relation to the unreasonableness of the risk of harm is properly categorized as a factual one, rather than a legal one."). Even so, the Kentucky Supreme Court has also "emphasize[d] that summary judgment remains a viable concept" when "reasonable minds cannot differ[,] or it would be unreasonable

for a jury to find breach or causation." *Shelton*, 413 S.W.3d at 916; *see also* [R. 31-1, p. 9 (quoting *Shelton*, 413 S.W.3d at 914)].

In the present case, Defendant argues that "no jury could conclude that Defendant breached any duties to Plaintiff because the [plywood] display was not unreasonably dangerous." [R. 31-1, p. 7]. Specifically, Defendant argues that Plaintiff's "testimony that he was doing something he had done before—by his own admission, hundreds of times—[by] getting a sheet of plywood off the second level of shelving at Lowe's" demonstrates that "[t]he fact that wood could catch on something and come off the shelf slowly or differently, or in any way to hurt Plaintiff [was] unforeseeable." *Id.* at 8; *see also* [R. 34-3, pp. 165:10–166:3 (Ramsey Depo. Excerpts) (explaining that he had retrieved plywood from Lowe's Somerset, including the second shelf, "hundreds of times" before)]. Therefore, Defendant asserts, "[t]here is no evidence that the display at issue was in any condition other than the condition it was supposed to be in on the date of the incident." [R. 37, p. 3]. Defendant also argues any danger posed by the height of the stacked plywood was open and obvious to Plaintiff, who had removed plywood at Lowe's Somerset before, and consequently Plaintiff knew of any dangers. [R. 37, pp. 4-6].

Of course, stores are not strictly liable for their customers' injuries, so the mere fact that Plaintiff was injured is not sufficient evidence of an unreasonably dangerous condition. *Cf. Littleton*, 2021 WL 4058004, at *4 (emphasis in original) (citing *Lanier v. Wal-Mart Stores, Inc.*, 99 S.W.3d 431, 463 (Ky. 2003)) (affirming the trial court's finding that a plaintiff who was struck by a falling board at a Lowe's store was unable to prove that the lumber was stacked in an unreasonably dangerous way based on the fact of his injury, especially considering the defendant's expert testimony that it was not); *see also Robinson v. Blue Velvet Exch., LLC*, No. 2015-CA-001244-MR, 2016 WL 5485221 at *3 (Ky. Ct. App. Sep. 30, 2016) ("The law requires plaintiffs

- 21 -

in premises liability actions to identify the hazard or condition which caused their [accident].").

But as mentioned, the question of breach is a factual one, typically inappropriate for summary

determination by the Court. *See Grubb*, 523 S.W.3d at 421 (majority opinion) (holding that the

question of the "unreasonableness of the risk of harm" as to a particular condition is "almost

always . . . properly categorized as a factual one"). The *Dunn* Court listed numerous examples that

create a triable issue on reasonableness:

> [T]he Kentucky Supreme Court held that an unreasonable risk could be created by
> a "simple curb" outside an emergency room (*McIntosh*), wires on the floor near a
> hospital bed (*Shelton*), ice in the parking lot of a hotel after a winter storm (*Carter*),
> the slipperiness of a wet hotel bathtub (*Goodwin*), and a small pothole between the
> pumps of a gas station (*Grubb*). The Kentucky Court of Appeals has likewise held
> that summary judgment was not appropriate because the reasonableness of the risk
> and foreseeability of the harm were questions of fact in cases where the plaintiff
> tripped on the corner of a pallet protruding from the bottom of a store display, fell
> when stepping backward onto uneven pavement at a gas station, or tripped over a
> concrete flower pot placed near the exit of a banquet hall.

*Dunn*, 724 Fed. Appx. at 374–75 (citing cases).

Plaintiff has similarly raised issues of fact on reasonableness and foreseeability in this case.

Plaintiff testified that the plywood had just been re-stocked; that a full unit of plywood was stacked

on the second shelf; that the top of the stack was about seven feet off the ground; and that he had

to stand on the tips of his toes to reach the plywood, which weighed about twenty or thirty pounds

per piece. *See* [R. 34-3, pp. 122:2–123:9, 146:15–22, 156:5–17]; [R. 35-2, p. 158:7–13]. Further,

although Plaintiff testified that he had retrieved plywood off the second shelf in the past, viewing

the evidence in the light most favorable to him, nothing indicates that the plywood on those

previous occasions had just been re-stocked at a height of seven feet. Indeed, unlike those previous

occasions, Plaintiff repeatedly requested help in loading the plywood, indicating that on this

occasion, the plywood was stacked much higher than usual.

More to the point, the Court cannot decide the breach question in a vacuum. The determination of foreseeable risk "depends on the specific facts of the case and cannot be usefully assessed for a category of cases; small changes in the facts may make a dramatic change in how much risk is foreseeable." *Shelton*, 413 S.W.3d at 913 (quoting *A.W. v. Lancaster Cty. Sch. Dist. 0001*, 784 N.W.2d 907, 917 (Neb. 2010)). Plaintiff argues that the Court must consider whether "the plywood, as stacked, was an unreasonably dangerous condition to invitees like Plaintiff, and that it was foreseeable to Lowe's that a customer who needed plywood off such a stack would attempt to retrieve it, *especially after the customer's requests for assistance were twice ignored*." [R. 35, p. 9 (emphasis added)]. This is especially true, Plaintiff argues, because three Lowe's employees watched and "laugh[ed] at him as he struggled to remove the plywood." *Id.* at 8.

Defendant does not dispute Plaintiff's testimony that he repeatedly asked Lowe's employees for help, that Plaintiff never received help, or that the Lowe's employees who he asked for help watched and laughed as Plaintiff struggled to retrieve the plywood, even after witnessing the first piece getting caught on the shelf above. Instead, Defendant asserts that "[t]he facts regarding whether Plaintiff asked for help, or received help, from Lowe's is (sic) not material." *See* [R. 37, p. 3]. The Court disagrees. *See Shelton*, 413 S.W.3d at 913. On this record, these facts bear directly on the unreasonableness and foreseeability analysis.

Plaintiff has provided undisputed testimony that "on the [shopping] trip in question[,] he repeatedly asked three Lowe's employees for help retrieving the plywood[, and] his requests were ignored." [R. 35, p. 9]; *see generally* [R. 35-2, pp. 150:4–153:25, 155:21–156:4 (Plaintiff explaining how he asked for help and did not receive any)]. Plaintiff testified that he first asked for help and was told to wait "a minute." [R. 35-2, at 148:4–5, 152:21–153:7]. This initial interaction was with three Lowe's employees standing close by, one identified as Alan Hall, a

- 23 -

second "blonde guy," and a female employee. *Id.* at 150:1-151:24. Plaintiff estimated he waited about five to ten minutes, *see id.* at 153:8–19, and the Lowe's employees "were just standing there, still talking. The customer [who had been with them earlier] had left." *Id.* at 153:20-22. When he asked for help a second time from the same employees standing nearby, one responded, "I said it's going to be a minute." *Id.* at 155:21–156:4. After checking with a friend at another lumber store on availability of plywood there (and being told they had none), Plaintiff decided he would have to get the plywood down at Lowe's himself. *See id.* at 156:18–157:4. Importantly, he also testified that the Lowe's employees watched him struggle on his "tippy toes" to take down the first piece of plywood (which got "jammed" on the shelf above as he was extracting it), *id.* at 158:7–17, laughed at him as he finally got the first piece of plywood on the cart, *id.* at 158:19–23, and failed to help or warn him upon seeing him struggle to load the plywood. *Id.* at 158:21–159:1. The undisputed record reflects that Plaintiff then continued to load additional pieces of plywood, all while the nearby Lowe's employees laughed and watched him continue to struggle with the plywood. *Id.* at 158:2–159:15. He was ultimately injured by a subsequent piece of plywood that also got hung up or caught. *Id.* at 159:2–15.

On this record, Defendant's argument that "[t]he fact that wood could catch on something and come off the shelf slowly or differently, or in any way to hurt Plaintiff is unforeseeable" is unsupported. [R. 31-1, p. 8]. In fact, the uncontested record reflects that the Lowe's employees *actually saw* Plaintiff standing on the tips of his toes struggling to retrieve the first piece of plywood, which "jam[med]," so he "had to coax it out." [R. 35-2, p. 158:7–22]. At that point Plaintiff paused, looked at the nearby laughing employees from whom he had earlier asked for assistance, and then, realizing they were still not going to help him, continued to retrieve plywood and ultimately injured himself. *See id.* at 158:21–159:23.

A reasonable fact finder could determine that it was foreseeable to the Lowe's employees that a customer might need assistance retrieving plywood that was stacked seven feet high on the shelf, that a customer who repeatedly asked for assistance unloading the plywood to no avail might resort to self-help, and, after watching Plaintiff struggle with the first piece of wood, that it was foreseeable that he could be injured retrieving additional sheets of plywood. A reasonable jury could find that Defendant owed a duty to Plaintiff—whether that was warning of or eliminating an unreasonably dangerous condition or taking action to minimize or avoid a foreseeable risk of harm—and that Defendant breached that duty. *Shelton*, 413 S.W.3d at 909, 914; *see also id.* at 908 (holding that "a land possessor is subject to the general duty of reasonable care").

Finally, Defendant's argument that any danger posed by the height or configuration of the stacked plywood was open and obvious to Plaintiff, who had removed plywood at Lowe's Somerset before, [R. 37, pp. 4–6], does not change the outcome. As mentioned, "[a]n open-and-obvious condition does not eliminate a landowner's duty." *Shelton,* 413 S.W.3d at 911; *see also Carter v. Bullitt Host, LLC*, 471 S.W.3d 288, 297 (Ky. 2015). Instead, "[t]he key question is foreseeability, that is, if a 'land possessor could reasonably foresee that an invitee would be injured by the danger,' then it is liable despite the obviousness of the condition because the risk posed remains unreasonable." *Maggard*, 2016 WL 1228590 at *2 (citing *Kentucky River Med. Ctr. v. McIntosh,* 319 S.W.3d 385, 392 (Ky. 2010)).

On the uncontested record, Plaintiff asked for help at least two times, but help did not materialize. So, he resorted to self-help, and, critically, the Lowe's employees watched as he struggled to load the plywood himself, never intervening or offering assistance until after Plaintiff was injured. A genuine issue of fact exists as to whether Lowe's "ha[d] reason to expect that [Plaintiff] [would] proceed to encounter the known or obvious danger because to a reasonable man

in his position the advantages of doing so would outweigh the apparent risk." *Shelton*, 413 S.W.3d at 914. As to the obviousness of the danger or Plaintiff's part in encountering it, the Sixth Circuit explained, "the obviousness of [ ] a risk-posing condition is nothing more than a circumstance that the trier of fact can consider in assessing the fault of either party." *Dunn*, 724 F. App'x at 374 (citing *Carter*, 471 S.W.3d at 297). At a minimum, a factual question remains concerning whether the Lowe's employees, after watching Plaintiff struggle to extract the first piece of wood, should have "take[n] action to minimize or avoid the risk" as Plaintiff continued to unload plywood by himself. *Maggard*, 2016 WL 1228590 at *1.

In sum, "the questions related to the unreasonableness of the risk posed by the [stacked plywood], the foreseeability of harm to Plaintiff, whether Plaintiff contributed to his injuries, whether Lowe's eliminated the risk or otherwise breached its duty of care to Plaintiff are all fact questions uniquely fit for the jury." *Ames*, 2021 WL 4097145 at *7. Accordingly, Defendant's Motion for Summary Judgment on breach, [R. 31], will be denied.

### C. Motion for Summary Judgment – Causation, [R. 34]

Defendant's Motion for Summary Judgment on Causation argues the law requires expert evidence to prove causation in cases like this, and Plaintiff failed to properly disclose any medical experts as required under Federal Rule of Civil Procedure 26(a)(2)(B), (C). *See generally* [R. 34-2]. Plaintiff refutes both arguments, stating "a jury could easily conclude that Plaintiff's injuries were caused by Defendant's failure to protect the Plaintiff from an unreasonably dangerous condition," [R. 44, p. 8], and that "Defendant's argument that Plaintiff did not disclose any medical experts in this case is without merit." *Id.* at 9. The Court will first address whether Plaintiff has properly disclosed any medical experts (and, if not, whether the failure to do so was harmless), and will then proceed to address the parties' arguments on causation.

1.    **Plaintiff's Rule 26 Disclosures**

Under the Scheduling Order entered on January 29, 2024, the parties' initial disclosures were due March 31, 2024, and Plaintiff's expert disclosures were due September 30, 2024. *See* [R. 11]. Plaintiff timely complied with his initial disclosures on March 29, 2024, [R. 44-4], and listed fifteen healthcare professionals (including doctors, nurses, and physical therapists) as "individual[s] likely to have discoverable information" under Federal Rule of Civil Procedure 26(a)(1)(A)(i). *See id.* at 1–2. Relatedly, in his interrogatory responses, served June 28, 2024, Plaintiff provided information about "each doctor, medical practitioner, [and] Health Care Provider . . . who ha[d] examined, treated, or conferred with [him]," *see* [R. 44-5, p. 2 (Pl. Answer Def.'s Interrog. No. 2)], as well as listed seventeen "treating physicians," while noting he had "not yet determined who he will call as a witness should this matter proceed to trial." *Id.* at 7–8 (Interrog. No. 10).

On October 3, 2024, *after* Plaintiff's expert disclosure deadline passed, the parties jointly moved for an extension of the scheduling order deadlines. *See* [R. 24]. After a teleconference in which the parties confirmed they also sought the extension of Plaintiff's expert witness disclosure deadline, the Court granted the motion and provided that, "[p]er Rule 26(a)(2), no later than October 31, 2024, Plaintiff[] shall disclose the identity of expert witnesses who may be used at trial, accompanied by written reports signed by the Rule 26(a)(2)(B) expert witnesses and/or written summaries consistent with Rule 26(a)(2)(C), as applicable, all in compliance with the rule." [R. 27]. Plaintiff then timely filed his Rule 26(a)(2) expert disclosures. *See* [R. 34-6]. In that disclosure, he listed only Keven Moore, his proposed retail safety expert, and included Moore's Report and other requisite information pursuant to Rule 26(a)(2)(B)(i)–(vi). *See id.* at 1. Plaintiff's disclosure also stated that he "reserve[d] the right to call any medical providers for expert

testimony at trial as listed in [his] Initial Rule 26 Disclosures." *Id.* at 2. No other reports or summaries of facts or opinions were included in the expert disclosure. *See* [R. 34-6].

Defendant argues that Plaintiff has not properly disclosed any of his physicians as expert witnesses and, as such, "should be prohibited from offering at trial any testimony from any witness regarding the diagnosis, causation, or treatment of Plaintiff." *See* [R. 34-2, pp. 14–15]. Plaintiff contends that Defendant's argument is "without merit" because he disclosed his treating physicians in his initial disclosures and interrogatory responses. *See* [R. 44, pp. 8–9]. In its Reply, Defendant argues that "Plaintiff cites no legal authority in support of this argument, and [it] must also fail." [R. 46, p. 5].

Expert disclosures are governed by Federal Rule of Civil Procedure 26, which requires parties to disclose the identities of experts they intend to use at trial. Fed. R. Civ. P. 26(a)(2)(A). The rule also requires certain other information be disclosed depending on the kind of expert being offered. Fed. R. Civ. P. 26(a)(2)(B) & (C); *see also West v. Heimermann*, No. 22-3532, 2023 WL 1822210, at *3 (6th Cir. Feb. 8, 2023). More specifically, Rule 26(a)(2) classifies experts into two categories and contains different disclosure requirements for each. As explained by the Sixth Circuit, Rule 26

> requires parties to disclose all expert witnesses whose testimony they "may use at trial." Fed. R. Civ. P. 26(a)(2)(A). If the expert was retained or specifically "employed to provide expert testimony" on the party's behalf, or the expert's "duties as the party's employee regularly involve giving expert testimony," the party's "disclosure must be accompanied by a written expert report." Fed. R. Civ. P. 26(a)(2)(B). If not, a report is not required. *See* Fed. R. Civ. P. 26(a)(2)(C). Even when an expert report is not required, expert disclosures must state: (1) "the subject matter on which the expert is expected to" testify, and (2) "a summary of the facts and opinions" underpinning the expected testimony. *Id.*

*West*, 2023 WL 1822210, at *3. To summarize, then, if an expert was retained or specifically employed for the purpose of providing expert testimony, the party intending to use that expert must comply with the more onerous requirements of Rule 26(a)(2)(B) and must disclose the

expert's identity and provide a written report containing certain information about the expert's opinions and qualifications. *See* Fed. R. Civ. P. 26(a)(2)(B)(i)–(vi). But if the expert was not retained or specifically employed for the purpose of providing expert testimony, the party intending to use that expert need not provide a written report; however, under Rule 26(a)(2)(B), the party must still identify the expert, state the subject matter on which the expert is expected to testify, and provide a summary of the facts and opinions to which the expert will testify. *See* Fed. R. Civ. P. 26(a)(2)(C)(i)–(ii).

Relevant here, "[t]reating physicians . . . typically are witnesses in the case by virtue of their having provided treatment relative to the underlying injury claimed in the case and, to the extent they testify only to their personal actions and observations, are generally considered fact witnesses and are not subject to the disclosure requirement[s] [of Rule 26]." *Garrison v. Sam's E., Inc.*, No. 1:16-CV-00152-GNS, 2018 WL 6566546, at *3 (W.D. Ky. May 24, 2018), *objections overruled*, No. 116-CV-00152-GNS-HBB, 2018 WL 4355824 (W.D. Ky. Sept. 12, 2018) (citation omitted). But "when a party intends to solicit testimony from a treating physician that goes beyond the facts of diagnosis and treatment, and into areas such as causation, future treatment or impairment, the anticipated opinion testimony is subject to disclosure under Rule 26(a)(2)." *Id.* Stated another way, the disclosure requirements in such cases, if any, depends on the *type* of testimony the treating physician will offer. Where the non-retained treating physician "ventures beyond the scope of strictly factual testimony, Rule 26(a)(2)(C) requires written disclosure of the subject matter on which the witness is expected to present expert testimony and 'a summary of the facts and opinions to which the witness is expected to testify.'" *Id.* (quoting Fed. R. Civ. P. 26. Rule 26(a)(2)(C)). As this Court has explained:

> although treating physicians do not automatically have to be disclosed as experts under Rule 26(a)(2), treating physicians and treating nurses "must be designated as

- 29 -

experts if they are to provide expert testimony" as defined in Federal Rule of Evidence 702 [ ]. *Musser*, 356 F.3d at 758. . . . [A]n expert report is generally not required for a treating physician who will testify regarding the course of treatment. If, however, the treating physician testifies "beyond the scope" of the treatment rendered and gives opinion testimony based on his "scientific, technical, or otherwise specialized knowledge," then the treating physician is still testifying as an expert witness, and at the very least must be disclosed according to the requirements in Rule 26(a)(2)(A) and (C), and Rule 26(a)(4) . . . . [*Fielden*, 482 F.3d at 869].

*McFerrin v. Allstate Prop. & Cas. Co*., 29 F. Supp. 3d 924, 933 (E.D. Ky. 2014) (citing *Musser v. Gentiva Health Servs.*, 356 F.3d 751, 758 (7th Cir. 2004)); *see also Fielden v. CSX Transp., Inc.*, 482 F.3d 866, 869–71 (6th Cir. 2007), *as amended on denial of reh'g and reh'g en banc* (July 2, 2007) (same).

Here, as to any doctors, Plaintiff has provided neither a separate expert report as required by Rule 26(a)(2)(B), nor a "summary of the facts and opinions to which the witness is expected to testify," as required by Rule 26(a)(2)(C). To be sure, Plaintiff listed a great number of physicians in his initial disclosures, [R. 44-4, pp. 1–2], and his answers to written discovery, [R. 44-5, pp. 2, 7-8 (Pl. Answers Def.'s Interrog. Nos. 2, 10)]. However, Rule 26(a)(2)(A) requires parties to disclose the identity of all experts who may be used at trial "even if [such witnesses] were previously disclosed as individuals with discoverable information under Rule 26(a)(1) because listing someone as a supporting witness does not alert the opponent to the possible need to take the types of countermeasures specially associated with experts." *McFerrin*, 29 F. Supp. 3d at 933 (internal citations omitted); *see also Musser,* 356 F.3d at 757–758. Here, Plaintiff did not properly designate any of those previously disclosed witnesses as *expert* witnesses because he did not properly disclose their identities per Rule 26(a)(2)(A) or provide disclosures sufficient to satisfy either Rule 26(a)(2)(B) or 26(a)(2)(C). *See* Fed. R. Civ. P. 26. Thus, to the extent Plaintiff attempts

to argue that these witnesses were properly disclosed as experts based on his initial disclosures or interrogatory answers, *see* [R. 44, pp. 8–9], he is incorrect.

In his expert witness disclosure, Plaintiff only named Keven Moore, his proposed retail expert, and provided Moore's report under Rule 26(a)(2)(B), [R. 34-6]. Plaintiff otherwise attempted to "reserve[] the right to call any medical providers for expert testimony at trial as listed in [his] Initial Rule 26 Disclosures," without listing any such medical providers or providing any other information. *Id.* at 2. No such reservation of right can function as fulfilling Plaintiff's obligations under Rule 26. To begin, Plaintiff's disclosure does not meet the bare requirement under Rule 26(a)(2)(A) to provide "the *identity*" of the expert witnesses he plans to call at trial— stating it could be one of roughly sixteen professionals listed in the initial disclosures who have at least eight different positions and are employed at six different locations does not sufficiently identify the witnesses. *See id.*; [R. 44-4, pp. 1–2]; *cf. Douglas v. United States*, No. 10-26-ART, 2011 WL 2633612, at *9 (E.D. Ky. July 5, 2011) ("Rule 26(a)(2)(A)'s requirement that a party disclose 'the identity of any witness it may use at trial to present' expert testimony demands more than simply pointing to a laundry list of physicians . . . ."); *Garrison,* 2018 WL 6566546, at *3 (explaining that the plaintiff's "expert witness disclosure list[ed] 16 individuals as potential experts," but "[i]t [was] unlikely that [she] actually intend[ed] to call all 16 of the witnesses," and such purported disclosure was "wholly inconsistent with both the letter and spirit of Rule 26").

Moreover, Plaintiff cannot rely on the fact that he "provided Defendant with copies of his medical records" to satisfy his duties under Rule 26(a)(2)(C). *See* [R. 44, p. 9]. In *Garrison*, the court spoke at length about the insufficiency of "figure it out for yourself" type of arguments. *See* 2018 WL 6566546, at *2–3. There, similarly, the plaintiff argued that she had disclosed her treating physicians as expert witnesses because she "disclosed [that] the treating physicians would be

- 31 -

testifying in conformance with their medical records, and she provided [the defendant] with a medical records release authorization whereby [it] could have independently obtained her records and divined the substance of the anticipated testimony." *Id.* at *2. The court explained that "[t]his 'figure it out for yourself' rationale, however, is precisely what the Rule 26 disclosure requirements are intended to avoid[, because] [t]he defendant's ability to obtain undisclosed information on its own is not a substitute for the plaintiff's obligation to disclose." *Id.* (citing *Roark v. Speedway, LLC*, No. 13-139-ART, 2015 WL 12978822, at *4 (E.D. Ky. April 6, 2015)). Here too, "all that [Defendant] could have learned from the medical records was the factual nature of the treatment." *Id.*; *see also McFerrin*, 29 F. Supp. 3d at 932 ("The purpose of Rule 26 disclosures of witnesses, both fact witnesses and expert witnesses, is to enable the parties to adequately prepare for trial. The commentary to Rule 26 states that the duty to disclose 'extends to witnesses that the other party already knows of and to documents that the other party already knows of or even possesses.'" (quoting Fed. R. Civ. P. 26, Practice Commentary)).

Finally, even if the Court ignored these failures, to the extent Plaintiff attempted to provide a "summary" of the opinions to which the treating physicians would testify in his interrogatory responses to satisfy Rule 26(a)(2)(C)(ii), it is similarly deficient. *See* [R. 44-5, p. 8 (Pl. Answer Def.'s Interrog. No. 10)]. After listing seventeen potential physician witnesses in his interrogatory responses, he asserted that "[i]t is expected that these healthcare providers will testify as to the injuries [he] sustained as a result of the collision, the treatment [he] received[,] and their diagnosis and prognosis of [his] injuries," as well as "that [his] injuries were caused by the incident," and other similarly generic statements. *See id.* This broad, nonspecific type of "summary" amounts, at best, to a listing of topics, and fails to fulfill Plaintiff's obligations under Rule 26(a)(2)(C). As courts have explained,

> a summary of opinions under Rule 26(a)(2)(C) means a brief account of the main opinions of the expert, and that the opinions must state a view or judgment regarding a matter that affects the outcome of the case. A mere statement of the topics of the opinions is insufficient. Further, . . . a summary of facts supporting those opinions under Rule 26(a)(2)(C) means a brief account of facts—only those on which the expert actually relied in forming his or her opinions—that states the main points derived from a larger body of information; merely stating the topic matters of facts relied upon does not suffice. Similarly, it does not suffice to reference large bodies of material as sources of facts, without stating a brief account of the main points from those large bodies of material on which the expert relies.

*Little Hocking Water Ass'n, Inc. v. E.I. DuPont de Nemours & Co.*, No. 2:09-CV-1081, 2015 WL 1105840, at *9 (S.D. Ohio Mar. 11, 2015); *cf. West*, 2023 WL 1822210, at *11 (finding the "summary" that the physicians would testify to which provided "[p]hysical and mental condition of [the plaintiff], historically and at the time [of the incident giving rise to the case,]" did "not satisfy Rule 26(a)(2)(B) or Rule 26(a)(2)(C)"); *Garrison*, 2018 WL 6566546, at *2 ("In reviewing [the plaintiff's] disclosure, she did disclose the subject matter upon which the witnesses would testify—the medical treatment they provided to her. Her disclosure is woefully deficient, however, in that it makes no effort to provide a summary of the facts and opinions to which the witnesses are expected to testify."). Plaintiff has failed to designate any of his treating physicians as medical experts pursuant to Rule 26(a)(2)(C).

The Court will also specifically address Dr. Larry Oteham, on whom Plaintiff primarily relies in his Response to Defendant's Motion for Summary Judgement on Causation. *See* [R. 44, P. 9]. Plaintiff asserts that Oteham is one of his "treating physicians," *see id.*, and he identified him as such in responding to Defendant's request that he list his treating physicians. [R. 44-5, p. 8 (Pl. Answer Def.'s Interrog. No. 10)]. However, it is clear from the record that Oteham is not a treating physician and was, instead, "one retained or specially employed to provide expert testimony in the case." *See* Fed. R. Civ. P. 26(a)(2)(B).

Importantly, treating physicians "form[] [their] causation opinions through the course of normal medical treatment of a patient." *Adkins v. Marathon Petroleum Co., LP*, 105 F.4th 841, 849 (6th Cir. 2024) (citing *Fielden*, 482 F.3d at 869–70). However, "if the physician 'formed his opinion at the request of [the patient's] counsel' and 'in anticipation of litigation,' courts should treat the physician as a retained expert and require compliance with Rule 26, including the production of a report[,]" as required by Rule 26(a)(2)(B). *Id.* (citing *Fielden*, 482 F.3d at 869, 871). Plaintiff plainly states that "[*his*] *attorney sent* [*him*] for an IME [(Independent Medical Exam)] with Larry Oteham." [R. 44-5, p. 2 (Pl. Answer Def.'s Interrog. No. 2) (emphasis added)]. Moreover, in Plaintiff's records from Oteham, [R. 44-3], there is no evidence of *treatment* as the term is conventionally understood, and the records indicate Oteham only performed testing to establish an "impairment rating." *See id.* Thus, it appears Oteham was specifically retained or employed for purposes of litigation, and Plaintiff was therefore required to comply with the more onerous disclosure requirements of Rule 26(a)(2)(B).

Regardless, Plaintiff failed to disclose Oteham as either an expert under Rule 26(a)(2)(B) (i.e., an expert retained for litigation) or Rule 26(a)(2)(C) (i.e., a treating physician providing opinion testimony). As with the other physicians, Plaintiff failed to identify Oteham in his expert disclosures as someone who would provide expert testimony, per Rule 26(a)(2)(A), and otherwise failed to submit an expert report per Rule 26(a)(2)(B), or a statement regarding the subject matter of the opinion and a summary of the facts and opinions the expert relied on, per Rule 26(a)(2)(C). *See* Fed. R. Civ. P. 26.[7] Accordingly, Plaintiff has not properly disclosed *any* medical expert witnesses.

---

[7] To the extent Plaintiff is attempting to argue that the IME record, [R. 44-3], is a sufficient expert report, *see* [R. 44, p. 8], he is incorrect. It does not, for example, contain Oteham's "qualifications, including a list of all publications authored in the previous 10 years"; "a list of all other cases in which, during the previous 4 years, [he] testified as an

## 2.    Harmlessness

Given this failure, Defendant asserts that Plaintiff "should be prohibited from offering at trial any testimony from any witness regarding the diagnosis, causation, or treatment of Plaintiff," and instead may offer such witnesses "solely as fact witnesses." [R. 34-2, p. 15]. Rule 37 governs noncompliance with Rule 26. *See Clark v. Louisville Jefferson Cnty. Metro Gov't*, No. 3:17-CV-419-GNS-CHL, 2023 WL 2316205, at *7 (W.D. Ky. Mar. 1, 2023). Under Rule 37, "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1); *see also Clark*, 2023 WL 2316205, at *2 (quoting *Dickenson v. Cardiac & Thoracic Surgery of E. Tenn. P.C.*, 388 F.3d 976, 983 (6th Cir. 2004)) ("The exclusion of non-disclosed evidence is automatic and mandatory under Rule 37(c)(1) unless non-disclosure was justified or harmless."). Therefore, the treating physicians may testify only within "the scope of [their] own diagnosis and treatment," *McFerrin*, 29 F. Supp. 3d at 934, unless the failure to disclose them as experts was "substantially justified" or "harmless." *See* Fed. R. Civ. P. 37(c)(1).

"The Sixth Circuit recognizes harmlessness as the key under Rule 37, not prejudice." *Eaton Corp. v. Angstrom Auto., Grp., LLC*, No. 1:20-CV-893, 2023 WL 5968005, at *2 (N.D. Ohio Sept. 14, 2023) (citation modified) (quoting *Sommer v. Davis*, 317 F.3d 686, 692 (6th Cir. 2003)); *see also Anderson v. United States*, No. 1:20-CV-00157-GNS-HBB, 2023 WL 171776, at *8 (W.D. Ky. Jan. 12, 2023). "Harmlessness means 'an honest mistake on the part of a party coupled with sufficient knowledge on the part of the other party.'" *Eaton Corp.*, 2023 WL 5968005, at *2

---

expert at trial or by deposition"; or "a statement of the compensation to be paid for the study and testimony in the case." *Contrast* [R. 44-3], *with* Fed. R. Civ. P. 26(a)(2)(B)(i)–(vi).

(quoting *Howe v. City of Akron*, 801 F.3d 718, 747 (6th Cir. 2015)). Moreover, "[t]his Court and sister courts[,] when dealing with similar circumstances[,] have strictly applied Fed. R. Civ. P. 37(c) to exclude expert testimony for violations of Fed. R. Civ. P. 26(a)(2)." *Alexander v. Walgreens Co.*, No. 118-CV-00069-GNS-HBB, 2019 WL 6736227, at *3 (W.D. Ky. Dec. 11, 2019) (collecting cases).

In determining whether the non-disclosure was substantially justified or harmless, the Sixth Circuit considers five factors:

> (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

*Howe*, 801 F.3d at 748 (quoting *Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 396–97 (4th Cir. 2014)). Plaintiff does not address the *Howe* factors in any way or even attempt to argue that his failure to designate his treating physicians as experts was either "substantially justified" or "harmless." The Court notes that "[t]he case law has made clear that [the expert's proponent] bears the burden to establish the harmlessness of expert disclosure violations." *Alexander*, 2019 WL 6736227, at *4 (citing *Sommer*, 317 F.3d at 692). Nonetheless, "in the interest of justice, the Court will weigh these factors to ensure that the appropriate sanction is imposed." *Cf. West v. Heimermann*, No. 3:20-CV-382, 2022 WL 1719676, at *11 (S.D. Ohio May 27, 2022), *aff'd*, 2023 WL 1822210 (considering the *Howe* factors when the plaintiff failed to address whether her failure to disclose a medical expert was harmless).

Applying the *Howe* factors in this case, the Court finds that Plaintiff's failure to appropriately designate his physicians as experts was not "substantially justified" or "harmless." *See generally Howe*, 801 F.3d at 748. The first factor, surprise to Defendant, weighs against permitting Plaintiff to elicit expert testimony because, even if "Defendant[] could not be surprised

to find that [Plaintiff's] treating physicians were identified as potential expert witnesses," it "would likely be surprised to learn of these physicians' opinions at trial given Plaintiff's failure to provide the required summaries of such opinions as required by Rule 26(a)(2)(C)." *West*, 2022 WL 1719676, at *11; *cf. Wade v. United States*, No. 21-10552, 2022 WL 19001837, at *3 (E.D. Mich. Dec. 19, 2022) ("[T]he mere production of medical records does not satisfy subsection (C) disclosure requirements." (collecting cases)).

The second and third factors, Plaintiff's ability to cure the surprise and "the extent to which allowing the evidence would disrupt trial," *Howe*, 801 F.3d at 748, also weigh in favor of exclusion. First, "the time for [Plaintiff] to remedy the surprise has passed." *Force v. HL Motor Grp., Inc.*, No. CV 19-12026, 2020 WL 13490038, at *4 (E.D. Mich. Aug. 20, 2020). As in *Force*, "[d]iscovery has closed, defendant[] ha[s] moved for summary judgment, [and] the briefing for that motion is complete." *Id.* Therefore, "[i]t is too late for [Plaintiff] to cure [his] failure to comply with Rule 26(a)(2) as it relates to the medical evidence []he must rely on in opposition to defendant['s] motion for summary judgment." *Id.* Moreover, "to cure the surprise, the Court would need to reopen expert discovery and set another dispositive motion deadline, but [Plaintiff] has not filed for an extension of either of these deadlines," and "reopening discovery and resetting a dispositive motions deadline would delay trial." *Wade*, 2022 WL 19001837, at *3 (internal quotation marks and citations omitted) (first citing *Kassim v. United Airlines, Inc*., 320 F.R.D. 451, 454 (E.D. Mich. 2017); then citing *Dobbins v. Greyhound Lines, Inc*., 336 F.R.D. 144, 148 (E.D. Mich. 2020)); *cf. Coleman v. Wal-Mart Stores E., LP*, No. CV 22-54-DLB-EBA, 2023 WL 7132938, at *4 (E.D. Ky. Oct. 30, 2023) ("[T]he fact that curing the surprise to Defendants would require the reopening of discovery counsels against a finding of substantial justification or harmless[ness].").

- 37 -

The importance of the evidence, the fourth *Howe* factor, "cuts both ways" because "[t]he more important the proof, the greater the effect of preclusion, but also the greater the harm in tardy disclosure." *EQT Prod. Co. v. Magnum Hunter Prod., Inc.*, No. 5:16-CV-150-JMH-REW, 2017 WL 2295906, at *5 (E.D. Ky. May 25, 2017) (collecting cases). "Regardless, importance cannot, by itself, save improperly disclosed evidence from being found unjustified or non-harmless." *Id.* (citation modified). As such, the fourth factor is neutral. *Cf. Coleman*, 2023 WL 7132938, at *4 (relying on *EQT Prod.*, 2017 WL 2295906, to find "the fourth *Howe* factor weighs in no party's favor").

Finally, the Court must address Plaintiff's "explanation for [his] failure to disclose the evidence." *Howe*, 801 F.3d at 748. Plaintiff has offered "no justification for [his] failure to provide expert disclosures under Rule 26(a)(2)," and "[c]aselaw stating that the mere production of medical records is not enough is replete." *Wade*, 2022 WL 19001837, at *3 (collecting cases). His failure is even more inexcusable given that he moved for, and received, an extension of time to file his expert disclosures, and Magistrate Judge Ingram explicitly reminded Plaintiff of his obligations under Rule 26, stating that, "[p]er Rule 26(a)(2) . . . *Plaintiff[] shall disclose the identity of expert witnesses who may be used at trial, accompanied by written reports signed by the Rule 26(a)(2)(B) expert witnesses and/or written summaries consistent with Rule 26(a)(2)(C), as applicable, all in compliance with the rule*." [R. 27] (emphasis added). "[Plaintiff's] counsel's failure to understand what that rule requires is no excuse." *Wade*, 2022 WL 19001837, at *3 (citing *Kassim*, 320 F.R.D. at 454). Moreover, it is clear Plaintiff's counsel *did* understand the Rule's requirements, at least in part, because he properly designated Moore and filed an expert report. *See* [R. 34-6]. This factor weighs against permitting expert testimony.

In sum, four of the five *Howe* factors weigh *against* Plaintiff, and the remaining factor is neutral. The Court holds that Plaintiff has failed in his burden to establish that his failure to properly disclose the treating physicians and Oteham as expert witnesses was either "substantially justified" or "harmless." *Cf. Coleman*, 2023 WL 7132938, at *4 (excluding the plaintiff's expert witnesses under Fed. R. Civ. P. 37(c)(1) when "three of the factors lean[ed] in [the d]efendants' favor, one lean[ed] slightly in [the plaintiff's] favor, and one lean[ed] in no party's favor" because the "failure to timely disclosure [ ] expert witnesses was not substantially justified or harmless"). Accordingly, given the Sixth Circuit's clear directive that "[t]he exclusion of non-disclosed evidence *is automatic and mandatory* under Rule 37(c)(1) unless non-disclosure was justified or harmless," *Dickenson*, 388 F.3d at 983 (6th Cir. 2004) (citation modified), the Court will prohibit Plaintiff from eliciting expert medical testimony.

That said, Plaintiff is not entirely precluded from offering medical testimony through his treating doctors. Because Plaintiff was "not required to provide a disclosure to the extent [his] treating practitioners offer testimony solely as fact witnesses," those physicians may "testify as [ ] fact witness[es] under Rule 26(a)(1), and, as such, will be limited to testifying as to the course of treatment and to what [they] directly observed while [Plaintiff] was under [their] care." *Garrison*, 2018 WL 6566546, at *3 (internal quotation marks and citations omitted); *see also Degener v. Sephora USA, Inc.*, 3:14-cv-586-CRS, 2016 WL 11750587, at * 5 (W.D. Ky. June 14, 2016) ("[A] treating physician who testifies as a fact witness may properly testify from personal knowledge about the care and treatment provided to the party." (citations omitted)).

### 3.    The Layman's Exception

Given the Court's exclusion of Plaintiff's expert medical testimony, the Court will address Defendant's argument that Plaintiff cannot establish causation without such testimony. *See generally* [R. 34-2].

"'Kentucky law usually requires expert or medical testimony to establish that an incident legally caused a medical injury.'" *Hopkins v. Speedway Superamerica LLC*, No. CV 3:15-CV-834-DJH, 2017 WL 3302661, at *2 (W.D. Ky. Aug. 2, 2017) (quoting *Lacefield v. LG Elecs., Inc.*, No. 3:06-12-KKC, 2008 WL 544472, at *3 (E.D. Ky. Feb. 26, 2008)). An exception known as the "layman's exception" exists, however, "for injuries whose cause can be reasonably inferred from common knowledge—for example, debilitating headaches suffered by a plaintiff with no prior history of headaches following a car accident in which his head struck the windshield." *Taylor v. Brandon*, No. 3:14-CV-588-DJH-RSE, 2019 WL 7454712 at *2 (W.D. Ky. Sept. 30, 2019) (citing *Blair v. GEICO Gen. Ins. Co.*, 917 F. Supp. 2d 647, 657 (E.D. Ky. 2013)); *see also Jarboe v. Harting*, 397 S.W.2d 775, 778 (Ky. 1965) ("There may, of course, be situations in which causation is so apparent that laymen with a general knowledge would have no difficulty in recognizing it. But excepting those situations we have adhered to the rule that the causal connection between an accident and an injury must be shown by medical testimony and the testimony must be that the causation is probable and not merely possible."). Therefore, "[u]nless the [layman's] exception applies, the general rule is that medical testimony is necessary to show 'that causation is probable and not merely possible.'" *Hopkins*, 2017 WL 3302661, at *2 (citation omitted).

Although he does not explicitly reference the exception, the Court understands Plaintiff to argue that the layman's exception applies in the instant action. *See generally* [R. 44, pp. 6–8]. For instance, he asserts that Defendant relies on inapplicable medical malpractice cases, and that,

although he "agrees with Defendant that experts are often required in complex cases in which a jury will not understand, through *common knowledge or experience*, the intricacies involved in the negligence claim," "this is simply not one of those cases." *Id.* at 6 (emphasis added).

Defendant argues that the layman's exception does not apply because there are other possible causes for Plaintiff's injury or, at least, for the extent of his injury and treatment needed. *See* [R. 34-2, p. 12]. For example, and without citing any record evidence, Lowe's argues that "[r]otator cuff tears can be repetitive motion injuries and can exist without causing symptoms." *Id*. Defendant also points to Plaintiff's deposition testimony about his long career in woodturning, which involved extensive heavy lifting, including lifting pieces of wood up to "about 250 [pounds]" by himself. *See id.* at 8 (citing [R. 34-3, p. 45:5–14]). In addition to Plaintiff's work history, Defendant points to Plaintiff's post-accident attempts to return to woodturning "against [his doctors'] orders" "six times" after December 7, 2022, the date of the Lowe's incident, *see* [R. 34-3, pp. 14:11–14, 15:2–4], which Plaintiff admitted caused him additional pain. *See, e.g.*, *id.* at 15:4–6; *id.* at 22:4–23:15; *id.* at 24:10–16. Defendant argues that, considering Plaintiff's work history and subsequent attempts to woodwork resulting in pain, "no lay juror will be able to evaluate the legal and medical cause of Plaintiff's numerous, complex medical injuries." [R. 34-2, p. 12].

As an initial matter, Plaintiff's post-accident attempts at woodworking are irrelevant to whether the layman's exception applies to Plaintiff's *initial* injury and pain, but, as explained below, may impact what other damages Plaintiff can recover. Otherwise, the record contains evidence, when viewed in the light most favorable to the Plaintiff, from which "laymen with general knowledge would have no difficulty in recognizing [causation].'" *Hopkins*, 2017 WL 3302661, at *2 (quoting *Lacefield*, 2008 WL 544472, at *3). Plaintiff flatly testified that

notwithstanding the physical demands of his work, he had no previous issues with either of his shoulders. [R. 34-3 at 84:22–85:11]. He further described his interaction with the falling plywood and the immediate pain and injury. He testified that a plywood board fell and his "arm just went straight back that way and down and [his] shoulder came out," [R. 44-2, p. 159:2–15], and he was "in more pain than [he had] ever been in," *id.* at 91:8–9. Medical records support his testimony. An MRI five days post-incident revealed multiple tears to the shoulder:

> (1) Full thickness supraspinatus and infraspinatus tears. (2) High-grade partial subscapularis tear with medial subluxation of the biceps tendon. (3) Posterior inferior labral tear. (4) Irregularity of the anterior-inferior glenohumeral ligament complex. Partial tear not excluded. (5) AC joint degenerative disease with osteophytosis narrowing the supraspinatus outlet.

[R. 34-4, p. 2]. A lay juror could "reasonably infer from common or layman's knowledge that" the falling twenty-to-thirty-pound piece of plywood, *see* [R. 34-3, p. 123:7–8], which landed on Plaintiff's shoulder, caused Plaintiff's shoulder injuries that were also revealed days later on the MRI. *See Blair*, 917 F. Supp. 2d at 657 (citations omitted).

The case law supports this outcome. In *Cervetto v. Powell*, No. 1:14-CV-00075-HBB, 2015 WL 7960791 (W.D. Ky. Dec. 3, 2015), the plaintiff, who was in a car accident, "testified in his deposition that during the accident his thigh struck the bottom of the steering wheel, and he 'sprung his wrist really bad from the steering wheel,'" he "was transported by EMS to an emergency room," and there was "no evidence of any pre-existing conditions or injuries prior to the accident." *Id.* at *3. "Giving [the plaintiff's] evidence the most favorable inferences, the [Court] [found] the evidence reasonably establishes a probable connection between the accident and [the plaintiff's] injuries" and "no expert testimony [was] necessary," so the issue of causation "should be submitted to the jury." *Id.*

- 42 -

*Taylor v. Brandon*, No. 3:14-CV-588-DJH-RSE, 2019 WL 7454712 (W.D. Ky. Sept. 30, 2019), is also instructive. There, in light of "the undisputed evidence show[ing] that [the plaintiff's] thumb began hurting immediately (and only) after he fell, and because 'it is within the realm of common knowledge that' a broken thumb can result from falling on one's hand, the Court [found] the layman's exception applicable." *Id.* at *3 (quoting *Blair*, 917 F. Supp. 2d at 657). Here too, despite Defendant's attempts to argue that Plaintiff's injuries were caused by his years of work as a woodturner, there is "undisputed evidence show[ing] that [Plaintiff's] [shoulder] began hurting immediately (and only) after" the incident at Lowe's Somerset. *Cf. id.*

Despite eliciting a great deal of testimony about the physical nature of Plaintiff's work, Defendant points to no record evidence that Plaintiff suffered any previous shoulder injury or that he had any shoulder issues or pain leading up to the incident. Although Defendant fails to make any argument in this regard, the MRI findings included, in addition to multiple tears involving the rotator cuff and other areas, that Plaintiff had "'AC joint degenerative disease with osteophytosis narrowing the supraspinatus outlet.'" [R. 34-2, p. 2 (quoting [R. 34-4, p. 2])]. Courts regularly limit the applicability of the layman's exception when there is competent evidence supporting multiple potential causes of an injury. *See, e.g.*, *Blair v. GEICO Gen. Ins. Co.*, 917 F. Supp. 2d 647, 657 (E.D. Ky. 2013) (finding that neck pain from a car accident required medical expertise on causation when the plaintiff had pre-existing neck pain, an earlier brain tumor, and fibromyalgia); *Lacefield*, 2008 WL 544472, at *4 (holding that Plaintiff's claim that a loud cell phone ring caused his tinnitus was beyond what a jury could "reasonably infer" and expert testimony was required); *Hopkins*, 2017 WL 3302661, at *4 (ruling that, given the plaintiff's history of shoulder pain and a recent shoulder surgery, expert testimony was necessary prove causation of a shoulder injury); *Auto-Owners Ins. v. Aspas*, No. 3:16-CV-189-DJH-RSE, 2018 WL

4643190, at *3 (W.D. Ky. Sept. 27, 2018) (denying the applicability of the layman's exception when there were multiple, documented potential causes for the plaintiff's cervical pain).

But, again, Plaintiff testified that his shoulder pain and issues occurred immediately and only after trying to catch the falling plywood, and Defendant points to nothing in the record to contradict this. *See Taylor*, 2019 WL 7454712 at * 2 (rejecting Defendant's argument that there were two plausible explanations for Plaintiff's thumb injury—the fall caused by Defendant's push or Plaintiff's right hand punch to his father-in-law before the Defendant officer's push—where Plaintiff testified that "his thumb did not hurt until he fell to the ground as a result of [Defendant's] actions"). On this record, a reasonable juror could determine causation when they hear evidence Plaintiff never had shoulder issues or pain previously, listen to evidence about the falling plywood Plaintiff attempted to catch and his immediate pain, and read medical reports taken just days following the incident that reflect tears to Plaintiff's rotator cuff and other parts of his shoulder. The Court finds the layman's exception is applicable here, and Plaintiff's claim therefore does not fail for lack of evidence on causation.

The Court must address one final matter. While the Court finds the layman's exception applicable here, Plaintiff's lack of expert testimony may ultimately impact the types of damages he can prove. [R. 1-2, ¶ 14 (Complaint)]. A plaintiff must establish causation for each type of damages sought. *See Auto-Owners Ins.*, 2018 WL 4643190, at *6–8 (citing *Huffman v. SS Mary & Elizabeth Hosp.,* 475 S.W.2d 631, 633 (Ky. 1972)); *see also Taylor,* 2019 WL 7454712, at *3–6. The parties did not address this issue, and the Court will not do so on its own. That said, this issue should be considered by the parties and may be appropriate for further pretrial proceedings.

For all these reasons, Defendant's Motion for Summary Judgment on Causation will be granted to the extent it seeks to exclude Plaintiff's expert medical testimony, and denied otherwise.

- 44 -

## IV.    CONCLUSION

Accordingly, the Court being otherwise sufficiently advised, **IT IS HEREBY ORDERED** as follows:

1. Defendant Lowe's Home Centers, LLC's Motion for Summary Judgment on breach, [**R. 31**], is **DENIED.**

2. Defendant's Motion for Summary Judgment on Causation, [**R. 34**], is **GRANTED in part** and **DENIED in part.** It is **GRANTED** to the extent Defendants seek to exclude Plaintiff's expert medical testimony. It is **DENIED** in all other respects.

3. Defendant's Motion to Exclude Testimony and/or Opinions of Plaintiff's Expert Witness, Keven Moore, [**R. 36**], is **GRANTED.**

This the 4th day of September, 2025.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY

cc: Counsel of Record